UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CBS OUTDOOR, INC.,

    Plaintiff,

v.

    Case No. 11-13887

    Honorable Nancy G. Edmunds

CITY OF ROYAL OAK,

    Defendant.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

    This matter comes before the Court on Plaintiff CBS Outdoor, Inc.'s motion for summary judgment. Plaintiff sought to construct a billboard and Defendant City of Royal Oak denied Plaintiff's application. Plaintiff now challenges the constitutionality of Defendant's zoning ordinance, specifically alleging that the Special Land Use Ordinance and application process is a prior restraint on speech when applied to billboards and that the restrictions on billboards do not advance a substantial governmental interest. For the reasons set forth below, Plaintiff's motion is GRANTED in part and DENIED in part.

**I.    Facts**

    **A.    Defendant's Zoning Ordinance**

    Defendant's Zoning Ordinance § 770-2 is entitled "Purpose," applies to the zoning ordinance as a whole, and states, in relevant part:

1

> A. The purpose of this chapter is to promote, protect, regulate, restrict and provide for the use of land and buildings within the City of Royal Oak; . . . and to promote public health, safety and welfare.
> B. For those purposes set for forth herein, the City is divided into districts. For each of those districts, regulations are imposed designating the uses for which buildings or structures shall or shall not be erected or altered, and designating the trades, industries, and the land uses or activities that shall be permitted or excluded or subjected to special regulations.

(*Id.* at § 770-2.)

Defendant's zoning ordinance establishes that billboards are a special land use for property zoned general industrial. (Zoning Ordinance § 770-44.)  Billboards are regulated by Zoning Ordinance § 770-57 ("Billboard Ordinance"), under "Article V. Special Provisions."  Section 770-49 specifies the intent of the Special Provisions section, stating:

> In addition to the permitted compatible uses contained in this chapter, there are certain other uses which may be desirable to permit in certain zone districts. However, due to their potential impact on neighboring land uses there is a need to regulate them with respect to their use, design and location. Additional conditions which may be imposed by the Plan Commission shall be designed to protect natural resources; the health, safety and welfare as well as the social and economic well being of those who will use the land use or activity under consideration; residents and landowners immediately adjacent to the proposed land use and the community as a whole. It is the intent of this article to provide the regulations necessary to address such uses and provide the Plan Commission with a set of standards upon which to make its decision.

(*Id.* at § 770-49.)  The Billboard Ordinance does not have an expressed intent or purpose specifically in § 770-57, but billboards are part of the "Special Provisions" section.  The Billboard Ordinance regulates the location, spacing, height, and size of permitted billboards.

Proposed billboards are also subject to Defendant's special land use application and permit process.  Article III, Section 11 of the Zoning Ordinance establishes the process for obtaining a special land use permit, which may be granted by the City's planning commission ("Planning Commission") in its discretion.  (*Id.* at § 770-11(B)(1).)

First, an applicant must submit a special land use application, a site plan, and a fee. (*Id.* at § 770-11(A).) If Defendant's zoning administrator determines that the submission is complete, he or she forwards the application to the Planning Commission. (*Id.* at § 770-11(B)(2).) The City's Planning Commission must hold a public hearing prior to deciding to approve or deny the special land use. (*Id.* at § 770-11(B)(3).)

In deciding to approve or deny a special land use, the Planning Commission shall establish whether the proposed special land use:

> (1) Will be harmonious and in accordance with the general objectives or any specific objectives of the Master Plan;
> (2) Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the area;
> (3) Will not be hazardous or disturbing to existing uses or uses reasonably anticipated in the future;
> (4) Will be an improvement in relation to property in the immediate vicinity and to the City as a whole;
> (5) Will be served adequately by essential public services and facilities or that the persons responsible for the establishment of the proposed use will provide adequately any such service or facility;
> (6) Will not create excessive additional public costs and will not be detrimental to the economic welfare of the City; and
> (7) Will be consistent with the intent and purposes of this chapter, and comply with all applicable provisions and standards which are established for said use by this chapter and other applicable uses.

(*Id.* at § 770-11(C)(1)-(7).) Any decision denying a request shall specify the basis for the denial. (*Id.* at § 770-11(B)(4).)

### B. Plaintiff's Billboard

Plaintiff brought this action when Defendant denied Plaintiff's request to erect and maintain a billboard located at 5060 Coolidge Hwy., which is zoned general industrial in the City of Royal Oak. (Pl. Mot. Summ J. Ex. E.) Defendant informed Plaintiff that it must submit a special land use application, a site plan, and a $1500 fee in order to obtain a permit to erect a billboard. Plaintiff submitted the required materials and fee. (Pl. Mot. Summ J. Ex. C.) Defendant's planning department reviewed the site

3

plan and informed the Planning Commission that the proposed billboard meets or exceeds the standards under the Billboard Ordinance. (Pl. Mot. Summ J. Ex. D.)

At a public hearing on August 9, 2011, however, the Planning Commission denied Plaintiff's special land use permit. (Def. Resp. Ex. A.) According to Defendant's Planning Commission meeting minutes:

> Denial of the special land use permit is based on the following findings:
> 1. The proposed billboard would be neither harmonious nor in accordance with the objectives of the Master Plan.
> 2. The proposed billboard would not be designed, constructed, operated, and/or maintained so as to be harmonious and appropriate in appearance with the expected commercial redevelopment of surrounding obsolete industrial properties.
> 3. The proposed billboard would be hazardous and/or disturbing to existing uses and commercial uses reasonably anticipated to develop in the area in the future. The proposed billboard would be a hazardous distraction to the large volumes of passing motorists on Coolidge Highway.
> 4. The proposed billboard would not be an improvement in relation to property in the immediate vicinity and/or to the City as a whole, and would provide no benefit to the community.
> 5. The proposed billboard would not be consistent with the intent and purposes of the Zoning Ordinance.
> 6. The proposed billboard would have other unspecified negative impacts on the public health, safety and welfare.

(Pl. Mot. Summ J. Ex. E.) The motion to deny Plaintiff the special land use permit was adopted unanimously. (*Id.*)

Defendant prohibited Plaintiff from erecting its proposed billboard by refusing to grant a special land use permit. (*Id.*) The Planning Commission made no statements that it contested the planning department's determination that Plaintiff's proposed billboard meets or exceeds all requirements under the Billboard Ordinance. (*Id.*)

## II. Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A moving party may meet that burden "by

'showing' – that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Revised Rule 56 expressly provides that:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). The revised Rule also provides the consequences of failing to properly support or address a fact:

> If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c), the court may:
> (1) give an opportunity to properly support or address the fact;
> (2) consider the fact undisputed for purposes of the motion;
> (3) grant summary judgment if the motion and supporting materials – including the facts considered undisputed – show that the movant is entitled to it; or
> (4) issue any other appropriate order.

Fed. R. Civ. P. 56(e). "The court need consider only the cited materials, but it may consider other materials in the record." Fed. R. Civ. P. 56(c)(3).

When the moving party has met its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Ultimately a district court must determine whether the record as a whole presents a genuine issue of material fact, drawing "all justifiable inferences in the light most favorable to the non-moving party." *Hager v. Pike Cnty. Bd. Of Educ.*, 286 F.3d 366, 370 (6th Cir. 2002).

**III. Analysis**

5

Plaintiff alleges two counts against Defendant: (1) the special land use ordinance and application process, when applied to billboards, are an unconstitutional prior restraint on speech and (2) Defendant's restrictions on billboards are unconstitutional because they do not advance a substantial governmental interest. Defendant refutes the substance of Plaintiff's claims and also argues that Plaintiff's claims should be dismissed as moot.

### A.  Mootness

Defendant argues that Plaintiff's claims are moot because the owner of the property where Plaintiff sought to erect its billboard was previously granted a variance to allow for the installation and operation of a storage business. In the agreement with Defendant, the property owner accepted a number of conditions, one of which Defendant argues prevents any attempt to leave part of the property for advertising.

It is well established that a plaintiff has standing to challenge a statute on the ground that it delegates overly broad licensing discretion to an administrative office, whether or not he has applied for a license. *R.S.W.W., Inc. v. City of Keego Harbor,* 397 F.3d 427, 436 (6th Cir. 2005). Ripeness analysis is relaxed for First Amendment cases involving a facial challenge to a regulation because courts see a need to prevent the chilling of expressive activity. *Currence v. City of Cincinnati,* 28 F. App'x 438, 441 (6th Cir. 2002).

Plaintiff did not need to apply for a land-use permit for its billboard before bringing this case. The fact that there is a legitimate reason that Plaintiff cannot erect a billboard in the specific location it chose in its application does not prevent Plaintiff from bringing a facial challenge against the permit process. Plaintiff's claims are not moot.

### B.  Prior Restraint

When a plaintiff challenges an ordinance as facially unconstitutional, there are

two separate frameworks that can be applied. In *Freedman v. Maryland,* the Supreme Court determined that a facial challenge exists whenever a licensing law gives a government official or agency substantial power to discriminate based on the content or viewpoint of speech by suppressing disfavored speech or disliked speakers. *Freedman v. Maryland,* 380 U.S. 51, 58-59 (1965); *see also City of Lakewood v. Plain Dealer Publ'g Co.,* 486 U.S. 750, 759 (1988). An ordinance cannot place "unbridled discretion in the hands of a government official or agency." *FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 225 (1990). To avoid granting such unbridled discretion, ordinances must contain precise and objective criteria on which the government official or agency must make their decisions and an ordinance that gives too much discretion to public officials is invalid. The second prong of the *Freedman* analysis is that the ordinance must set time limits on the decisionmaker, or there is a risk of indefinitely suppressing permissible speech*. Id.*

The Supreme Court has determined, however, that the *Freedman* framework does not apply to content-neutral, "time, place, and manner" restrictions. *Thomas v. Chicago Park Dist.*, 534 U.S. 316, 322 (2002). A content-neutral permit scheme: (1) must not be based on the content of the message, (2) must be narrowly tailored to serve a significant governmental interest, and (3) must leave open ample alternatives for communication. *Id.* Even content-neutral restrictions, however, can be applied in such a manner as to stifle free expression. The Supreme Court determined that "where the licensing official enjoys unduly broad discretion in determining whether to grant or deny a permit, there is a risk that he will favor or disfavor speech based on its content." *Thomas*, 534 U.S. at 323; *see Forsyth Cnty. v. Nationalist Movement,* 505 U.S. 123, 131 (1992). Time, place, and manner regulations must contain adequate standards to guide the official's decision and render it subject to effective judicial review. *Id.*

In this case, Plaintiff argues that the application process for the special use permits lack the requisite guiding standards.[1] Regardless of whether an ordinance is content-based or content-neutral, it cannot place unduly broad discretion in the hands of a licensing official or agency to determine whether to grant or deny a permit. *FW/PBS,* 493 U.S. at 225; *Thomas*, 534 U.S. at 316; *Forsyth Cnty.*, 505 U.S. at 131. Numerous courts, including the Sixth Circuit, have applied the prior restraint doctrine to sign and billboard licensing schemes as well as other types of zoning ordinances. *H.D.V-Greektown, LLC v. City of Detroit,* 568 F.3d 609 (6th Cir. 2009).

The Eastern District of Michigan has found several city zoning ordinances that govern billboards to be unconstitutional prior restraints on free speech because they lack objective standards and placed too much discretion in the licensing officials. *See Int'l Outdoor, Inc. v. City of Romulus*, No. 07-15125, 2008 WL 4792645 (E.D. Mich. Oct. 29, 2008) (Zatkoff, J.); *King Enters., Inc. v. Thomas Twp.*, 215 F. Supp. 2d 891 (E.D. Mich. 2002) (Lawson, J.); *Macdonald Adver. Co. v. City of Pontiac*, 916 F. Supp. 644 (E.D. Mich. 1995) (Rosen, J.); *see also CBS Outdoor, Inc. v. City of Kentwood*, No. 09-CV-1016, 2010 WL 3942842 (W.D. Mich. Oct. 6, 2010).

In *International Outdoor*, the court examined an ordinance that required a billboard proposal to satisfy the ordinance's general standards. These standards included a requirement that the use "be in harmony with the appropriate and orderly development of the surrounding neighborhood," that "[t]he proposed use shall relate harmoniously with the physical and economic aspects of adjacent land uses," that "[t]he proposed use is so designed, located, planned and to be operated that the public health, safety and welfare will be protected" and that "[t]he proposed use shall not be

---

[1] Plaintiff argues that the *Freedman* framework should apply and Defendant argues that the *Thomas* framework should apply.

detrimental or injurious to the neighborhood . . . and shall be in harmony with the general purpose and intent of the Zoning Ordinance." *Int'l Outdoor*, 2008 WL 4792645, at *9. The *Romulus* court found that the ordinance criteria were ambiguous and arbitrary and did not qualify as the "narrow, objective, and definite standards" required by the Supreme Court. *Id.*

In *MacDonald Advertising,* the court examined an ordinance requiring that proposed constructions "will not unreasonably injure the surrounding neighborhood . . . and that any proposed [construction] shall not be out of harmony with the predominant type of building in the particular district." 916 F.Supp. at 650. The *MacDonald* court found that "there is nothing in the ordinance 'standards' which insures that the Commissioners' discretionary licensing decision will not be based on speech content. Therefore, the ordinance is facially invalid." *Id.*

Similarly, in *CBS Outdoor v. City of Kentwood*, the court examined a zoning ordinance that required a determination of whether; (1) the application "preserves the health, safety, and welfare of the public, and is in harmony with the general purpose and intent of this ordinance," (2) the request "may have a substantial and permanent adverse effect on neighboring property, " (3) it "is generally aesthetically compatible with its surroundings," and (4) it will "act as a detriment to adjoining property, act as an undue distraction to traffic on nearby streets, or detract from the aesthetics of the surrounding area." The *Kentwood* court found that the provisions of the zoning ordinance were unconstitutional because they conveyed broad discretion on the Planning Commission without any objective limits as a check against denial based solely upon the content of the speech of the applicant. *Kentwood*, 2010 WL 3942842, at *9 (finding the provisions "not narrowly drawn and bereft of any standards that are even arguably objective").

9

In this case, Plaintiff argues that the special land use provisions of the zoning ordinance grant Defendant unbridled discretion to approve or reject a billboard through an arbitrary decision-making process that lacks narrow, objective, and definite standards. The language of the ordinance specifically states that a special land use permit "may be granted by the Planning Commission at its discretion." In deciding to approve or deny a special land use, the Planning Commission considers whether it:

> (1) Will be harmonious and in accordance with the general objectives or any specific objectives of the Master Plan;
> (2) Will be designed, constructed, operated, and maintained so as to be harmonious and appropriate in appearance with the existing or intended character of the general vicinity and will not change the essential character of the area;
> (3) Will not be hazardous or disturbing to existing uses or uses reasonably anticipated in the future;
> (4) Will be an improvement in relation to property in the immediate vicinity and to the City as a whole;
> (5) Will be served adequately by essential public services and facilities or that the persons responsible for the establishment of the proposed use will provide adequately any such service or facility;
> (6) Will not create excessive additional public costs and will not be detrimental to the economic welfare of the City; and
> (7) Will be consistent with the intent and purposes of this chapter, and comply with all applicable provisions and standards which are established for said use by this chapter and other applicable codes.

As in the cases above, the vague, ambiguous, and arbitrary "standards" in this case do not qualify as "narrow, objective, and definite standards" required by the Supreme Court.

Defendant's special land use permit, when applied to billboards, is an unconstitutional prior restraint on speech. Plaintiff's motion for summary judgment on Count I is GRANTED.

### C. Significant Government Interest

To be constitutional, a time, place, and manner regulation must; (1) "not be based on the content of the message," (2) "be narrowly tailored to serve a significant

10

governmental interest," and (3) "leave open ample alternatives for communication." *Thomas,* 534 U.S. at 323 n.3; *Clark v. Comm. for Creative Non-Violence,* 468 U.S. 288, 293 (1984). In this case, the restrictions in § 770-57 have no censorial purpose, as they are both viewpoint- and content-neutral and regulate only the non-expressive components of billboards; the location, spacing, size, and height. *See Prime Media, Inc. v. City of Brentwood, Tennessee*, 398 F.3d 814, 819 (6th Cir. 2005).

Plaintiff argues, however, that the Billboard Ordinance is unconstitutional because it lacks a statement of purpose and therefore cannot advance a government interest, since no interest is specified. In its response brief, Defendant states that it has significant government interest in protections for safety, traffic flow, aesthetic appearance and harmony. (Def. Resp. 9, 10.)

Aesthetics and safety are legitimate governmental interests. *Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 507-08 (1981). A court, however, will not take judicial notice of an unstated and unexplained legislative purpose for an ordinance that restricts speech. *Nat'l Adver. Co. v. Town of Babylon*, 900 F.2d 551, 555-56 (2d Cir. 1990).

The statement of purpose of the zoning ordinance as a whole, in § 770-2, states that "limit[ing] the inappropriate overcrowding of land and congestion of the population and transportation systems" and "promot[ing] public health, safety and welfare" are among its purposes. The zoning ordinance, in § 770-3 also states, "In interpreting and applying the provisions of this chapter, the requirements shall be held with the intended purpose to be for the promotion of the public health, safety, convenience, comfort, prosperity and general welfare." Defendant argues this is sufficient to establish the legitimate government purpose of traffic and safety in regulating the billboards in § 770-57. Plaintiff argues that these do not state the specific intent or purpose of the specific billboard regulations.

The zoning ordinance does not list any separate or specific intent or purpose for the regulations on billboards, apart from the generic statements above. The billboard regulations are part of the zoning ordinance, however, and the purpose stated for the zoning ordinance as a whole apply just as readily to its parts. Defendant here states that traffic safety, aesthetics, and harmony are the intentions behind its billboard regulations, and has shown that those are stated purposes in the zoning ordinance, in which the billboard regulations are included.

In *International Outdoor*, the court rejected the defendant's argument that the broad statement of purpose in the zoning ordinance applied to its billboard restrictions. In that case, however, the City of Romulus regulated billboards in a sign ordinance, not the zoning ordinance, the sign ordinance had no stated purpose, and the defendant argued that the zoning ordinance purpose should be imputed to the sign ordinance. *Int'l Outdoor*, 2008 WL 4792645, at *8. In this case, the billboard regulations are part of the zoning ordinance and so its purpose is rightfully applied.

The question becomes whether the regulations are narrowly tailored to serve that legitimate government interest. A time, place, and manner regulation does not need to be the least restrictive or least intrusive means, but it "may not burden substantially more speech than is necessary to further the government's legitimate interests. Government may not regulate expression in such a manner that a substantial portion of the burden on speech does not serve to advance its goals." *Ward v. Rock Against Racism*, 491 U.S. 781, 798 (1989). As long as the means are not substantially broader than necessary to achieve the government interest, the regulation will not be invalid. *Id.* at 800.

The Sixth Circuit examined this exact issue and determined:

> What Prime Media seems to demand is evidence establishing something akin to what the district court required, an explanation of why the regulation limits

>billboards to less than six feet in height and 120 square feet in size, as opposed to some greater height or size increment. While Prime Media is right to insist that governments be forced to weigh the costs and benefits of regulating speech and be forced to do so more rigorously than in other areas of legislation, we do not think the Supreme Court's cases (or our own) impose such a stringent duty of calibration-at least in the context of a content-neutral time, place and manner restriction. . . . To ask the City to justify a size restriction of 120 square feet over, say, 200 square feet or 300 square feet would impose great costs on local governments and at any rate would do little to improve our ability to review the law-because any further explanation assuredly would contain the kind of aesthetic and subjective judgment that judges are not well-equipped to second guess.

*Prime Media*, 398 F.3d at 823-24. The same reasoning in *Prime Media* applies here.

This Court finds that the size, height, and location requirements that Defendant enacted are narrowly tailored to its legitimate goals of aesthetics, traffic flow, and safety. The restrictions leave open ample alternatives for communication and this Court finds that Defendant has satisfied its burden. Plaintiff's motion for summary judgment on Count II is DENIED.

## IV.    Conclusion

For the foregoing reasons, Plaintiff's motion for summary judgment is GRANTED in part and DENIED in part.

>s/Nancy G. Edmunds
>Nancy G. Edmunds
>United States District Judge

Dated:  August 29, 2012


I hereby certify that a copy of the foregoing document was served upon counsel of record on August 29, 2012, by electronic and/or ordinary mail.

>s/Carol A. Hemeyer
>Case Manager

13